Nicole **MONTGOMERY**, individually and on behalf of others similarly situated,

v.

**BANK OF AMERICA CORP**, and **Bank of America N.A.**

**No. CV 07–1204 CASAJWX.**

United States District Court, C.D. California.

Sept. 24, 2007.

Amber S. Healy, Michael A. Gold, Mitch H. Kalcheim, Kalcheim Salah, Los Angeles, CA, for Plaintiff.

Laurence Hutt, James Jacob Finsten, Gregory Andrew Ellis, Arnold & Porter, Los Angeles, CA, Howard N. Cayne, Arnold & Porter, Washington, DC, for Defendants.

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

CHRISTINA A. SNYDER, District Judge.

## I. INTRODUCTION AND BACKGROUND

On January 25, 2007, plaintiff Nicole Montgomery, on behalf of herself and others similarly situated, filed the instant complaint against defendant Bank of America Corporation ("BAC") in the Superior Court of the State of California for the County of Los Angeles. In her complaint, plaintiff alleges the following claims: (1) fraudulent and unfair business practices in violation of the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.* ("UCL"); (2) unlawful business practices in violation of the UCL; and (3) violation of the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA"). The gravamen of plaintiff's complaint is that BAC failed to disclose adequately the Nonsufficient Funds/Overdraft Fees policy ("NSF/OD fees policy") which it imposes on its customers when they incur an overdraft on their account.

The action was removed to this Court by defendant BAC on February 22, 2007, pursuant to 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1453(b), also known as the Class Action Fairness Act of 2005. On May 7, 2007, BAC filed a motion for judgment on the pleadings. On June 22, 2007, the Court took BAC's motion for judgment on the pleadings off calendar after plaintiff agreed to amend her complaint. Plaintiff filed the First Amended Complaint ("FAC") on July 12, 2007, adding Bank of America, N.A. as a defendant.

On July 27, 2007, defendants filed the present motion to dismiss the FAC. Plaintiff filed her opposition to defendants' motion to dismiss on August 6, 2007. Defendants filed a reply thereto on August 13, 2007. A hearing on was held on September 24, 2007. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows:

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, —— – ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

In considering a motion pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). The complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Sprewell*, 266 F.3d at 988; *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

*Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (*e.g.,* facts presented in briefs, affidavits, or discovery materials). *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.,* 102 F.3d 1524, 1537 (9th Cir.1996), *rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999); *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed.R.Civ.P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000).

## III. DISCUSSION

■ The gist of defendants' attack on the FAC is that it violates Federal Rule of Civil Procedure Rule 8, in that it fails to provide a short and plain statement of plaintiff's claim. Defendants note that plaintiff appears to assert three claims. First, defendants note plaintiff's assertion that defendants fail to provide customers with a schedule of their NSF/OD fees at the time they open their accounts. Defendants argue that to the extent that this claim is made, plaintiff lacks standing because she has admitted that she was apprised of both the possibility and the amount of defendants' NSF/OD fees. Second, to the extent that plaintiff challenges defendants' alleged failure to disclose their fees to other customers, defendants argue that plaintiff has failed to allege that any such nondisclosure deceived or injured her, such that plaintiff lacks standing to pursue this claim in a representative capacity. Finally, defendants argue that plaintiff's claims are in any event preempted by regulations promulgated by the Office of the Comptroller of the Currency ("OCC") pursuant to the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq.* Because the Court finds that plaintiff's claims are preempted by the NBA, as detailed below, the Court does not address defendants' other challenges to the FAC.

■ Whether a state law is preempted by federal law and regulations is determined by looking to the intent of Congress. *Cal. Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). Congress may preempt state law with federal law and regulations in three ways. *Bank of America v. City & County of S.F.,* 309 F.3d 551, 558 (9th Cir.2002). First, Congress may preempt state law by so stating in express terms. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). There appears to be no authority to suggest that the NBA expressly preempts state law. Second, the court may infer that Congress intended to preempt state law where federal regulation in a particular field is "so pervasive as to make reasonable the inference that Congress left no room for the States to

supplement it." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). In cases where "field preemption" applies, "the 'mere volume and complexity' of federal regulations demonstrate an implicit congressional intent to displace all state law." *Bank of Am.,* 309 F.3d at 558 (*quoting Geier v. Am. Honda Motor Co.,* 529 U.S. 861, 884, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (internal quotations and citation omitted)). Finally, the court may imply preemption "when state law actually conflicts with federal law," *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), such that " 'compliance with both federal and state regulations is a physical impossibility,' *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)." *Bank of Am.,* 309 F.3d at 558.

Banks are "instrumentalities of the federal government, created for a public purpose, and ... subject to the paramount authority of the United States." *Marquette Nat'l Bank v. First of Omaha Serv. Corp.,* 439 U.S. 299, 308, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978) (citation and internal quotations omitted). "The National Bank Act of 1864 was enacted to protect national banks against intrusive regulation by the States." *Bank of America v. City & County of S.F.,* 309 F.3d 551, 561 (9th Cir.2002) (*citing* Cong. Globe, 38th. Cong., 1st Sess., 1451 (1864) (noting that the "object" of the National Bank Act was to "establish a national banking system" free from intrusive state regulation); *Marquette Nat'l Bank,* 439 U.S. at 314–15, 99 S.Ct. 540 ("Close examination of the Na-

tional Bank Act of 1864, its legislative history, and its historical context makes clear that ... Congress intended to facilitate ... a national banking system.") (internal quotations and citations omitted)). In accordance with the Congressional purpose of protecting national banks against intrusive state regulation, the Supreme Court has interpreted "grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily preempting, contrary state law." *Barnett Bank,* 517 U.S. at 32, 116 S.Ct. 1103 (citations omitted). The NBA, 12 U.S.C. § 24 (Seventh), grants to national banks the authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking," which have been interpreted to include activities which are " 'convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act.' " *Bank of Am.,* 309 F.3d at 562 (*quoting M & M Leasing Corp. v. Seattle First Nat'l Bank,* 563 F.2d 1377, 1382 (9th Cir.1977), *cert. denied,* 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978), *quoting Arnold Tours, Inc. v. Camp,* 472 F.2d 427, 432 (1st Cir.1972)). "The incidental powers of national banks are thus not limited to activities deemed essential to the exercise of enumerated powers but include activities closely related to banking and useful in carrying out the business of banking." *Bank of Am.,* 309 F.3d at 561–562 (citing *First Nat'l Bank v. Taylor,* 907 F.2d 775, 778 (8th Cir.1990), *cert. denied,* 498 U.S. 972, 111 S.Ct. 442, 112 L.Ed.2d 425 (1990)). Based on the foregoing, state attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the National Bank Act, or impair the efficiency of national banks to discharge their duties. *Bank of Am. v. City & County of S.F.,* 309 F.3d

551, 561 (9th Cir.2002) (*citing First Nat. Bank v. California,* 262 U.S. 366, 369, 43 S.Ct. 602, 67 L.Ed. 1030 (1923)).

The Supreme Court has created exceptions to the general rule that national banks' enumerated and incidental powers are not normally limited by, but rather ordinarily preempt, contrary state law. Within five years of the enactment of the NBA, the Supreme Court held that all of the banks' "contracts are governed and construed by State laws," as are "[t]heir acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts." *Nat'l Bank v. Commonwealth,* 76 U.S. 353, 362, 9 Wall. 353, 19 L.Ed. 701 (1869) (holding that states could tax individual shareholders' shares, even if they were shares of a bank organized under federal laws); *see also Watters v. Wachovia Bank, N.A.,* — U.S. ——, ——, 127 S.Ct. 1559, 1567, 167 L.Ed.2d 389 (2007) (noting that national bank contracts are governed and construed by state laws); *cf.* 12 C.F.R. § 7.4009 ("State laws on the following subjects are not inconsistent with the powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national bank powers ... [c]ontracts ...."). Similarly, the Ninth Circuit has held that "states retain some power to regulate national banks in areas such as contracts, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and tort law." *Bank of Am.,* 309 F.3d at 559; *see also, Wells Fargo Bank N.A. v. Boutris,* 419 F.3d 949, 963 (9th Cir.2005).

In the instant case, plaintiff's claims arise from two allegations: (1) NSF/OD fees charged by defendants, which escalate on a sliding scale per overdraft, are overly harsh, unjustified, and bear no relation to the actual damages incurred by the bank and are therefore in breach of California contract law; and (2) defendants' NSF/OD fee agreements are contracts of adhesion and unconscionable because they do not accurately disclose when the fees are assessed and for what amount.

Defendants argue that plaintiff's claims regarding the amount of fees charged and the sliding scale are preempted by 12 C.F.R. § 7.4002, regulations which provide the following:

(a) Authority to impose charges and fees. A national bank may charge its customers non-interest charges and fees, including deposit account service charges.

(b) Considerations.

(1) All charges and fees should be arrived at by each bank on a competitive basis and not on the basis of any agreement, arrangement, undertaking, understanding, or discussion with other banks or their officers.

(2) The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. A national bank establishes non-interest charges and fees in accordance with safe and sound banking principles if the bank employs a decision-making process through which it considers the following factors, among others:

(i) The cost incurred by the bank in providing the service;

(ii) The deterrence of misuse by customers of banking services;

(iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and

(iv) The maintenance of the safety and soundness of the institution.

Defendants argue that, in authorizing national banks to charge NSF/OD fees, § 7.4002 also "grants broad discretion to national banks in setting the fee *amounts,* based upon multiple factors including the banks' own competitive position and economic soundness, as well as deterrence of overdrafts by customers." Mot. at 12 (emphasis in original). Defendants contend that, because the regulations permit national banks to charge fees, the regulations essentially occupy the field. Mot. at 12. Additionally, defendants argue that "it is up to *the OCC,* not private plaintiffs, to determine whether a bank has properly weighed the discretionary factors set forth in Section 7.4002 when setting the fee amounts." Mot. at 13 (emphasis in original).[1]

With respect to the claims regarding defendants' disclosure of its NSF/OD fees to customers, defendants argue that this "effort to use state unconscionability law to attack the contents of [defendants'] disclosure is also expressly preempted by OCC regulations." Mot. at 19. Defendants contend that 12 C.F.R. § 7.4007(b)(2) is the controlling regulation because it "expressly preempts efforts to impose state-law 'disclosure requirements' upon national banks." *Id.* at 12 C.F.R. § 7.4007(b) provides in part: "A national bank may exercise its deposit-taking powers without regard to state law limitations concerning: ... (iii) Disclosure requirements."

Plaintiff responds that, historically, the presumption against preemption is particularly strong in areas pertaining to the state's traditional police powers. Pl.'s Opp'n to Def.'s Mot. ("Opp'n") at 11 (*citing Cipollone v. Liggett Group,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Jevne v.Super. Ct.,* 35 Cal.4th 935, 949, 28 Cal.Rptr.3d 685, 111 P.3d 954 (2005); *Bronco Wine Co. v. Jolly,* 33 Cal.4th 943, 956, 17 Cal.Rptr.3d 180, 95 P.3d 422 (2004) (stating that the party arguing federal preemption of a state statute has the burden of demonstrating preemption); *Peatros v. Bank of America,* 22 Cal.4th 147, 158–59, 91 Cal.Rptr.2d 659, 990 P.2d 539 (2000)). Plaintiff asserts that the California Supreme Court has held

---

**1.** Defendants rely on 12 U.S.C. § 484 for this proposition, which states that "[n]o national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress or by either House thereof or by any committee of Congress or of either House duly authorized." 12 C.F.R. § 7.4000(a) further provides that

> [o]nly the OCC or an authorized representative of the OCC may exercise visitorial powers with respect to national banks, except as provided in paragraph (b) of this section .... For purposes of this section, visitorial powers include:
> (i) Examination of a bank;
> (ii) Inspection of a bank's books and records;
> (iii) Regulation and supervision of activities authorized or permitted pursuant to federal banking law; and

> (iv) Enforcing compliance with any applicable federal or state laws concerning those activities.
12 C.F.R. § 7.400(a)(1)-(2). However, § 7.400(b)(2) specifically provides an exception for courts of justice. 12 C.F.R. 7.400(b)(2) ("National banks are subject to such visitorial powers as are vested in the courts of justice. This exception pertains to the powers inherent in the judiciary....."). Additionally, as stated by the Ninth Circuit in *Wells Fargo Bank, N.A. v. Boutris,* 419 F.3d 949, 963–64 (9th Cir.2005), "the preemption of state law accomplished by [12 U.S.C. § 484] is entirely procedural, not substantive. The exclusively federal power to 'visit' national banks is not the power to oust all state regulation of those entities. Instead, the exclusivity of visitorial authority preempts only *enforcement* of state visitation laws by *state officials* ... National banks remain bound by state laws and regulations, except those laws substantively preempted by other provisions of the Bank Act."

that "[t]he historic police powers of the States extend to consumer protection," and that therefore, federal preemption of the state consumer protection laws is disfavored. Opp'n at 11–12 (*quoting Smiley v. Citibank,* 11 Cal.4th 138, 148, 44 Cal. Rptr.2d 441, 900 P.2d 690 (1995), *aff'd* 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25); (*also citing California v. ARC America Corp.,* 490 U.S. 93, 101, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989); *Washington Mutual Bank v. Sup.Ct.,* 95 Cal.App.4th 606, 613, 115 Cal.Rptr.2d 765 (2002) (laws concerning consumer protection, such as California's Unfair Practices Act and CLRA, are included within the states' police power and therefore subject to a heightened presumption against preemption); *Black v. Fin. Freedom Senior Funding Corp.,* 92 Cal.App.4th 917, 926, 112 Cal.Rptr.2d 445 (2001); *Spielholz v.Super. Ct.,* 86 Cal. App.4th 1366, 1372, 104 Cal.Rptr.2d 197 (2001) (state's police powers extend to consumer protection)).

Plaintiff further argues that because the FAC includes allegations that defendants failed to adequately disclose the NSF/OD fees at issue, these allegations are not preempted by the NBA. Opp'n at 12. Plaintiff relies on *Smith v. Wells Fargo Bank, N.A.,* 135 Cal.App.4th 1463, 38 Cal. Rptr.3d 653 (2005), wherein the California Court of Appeal held that claims for false and misleading advertising in violation of the UCL and CLRA were not preempted by 12 C.F.R. § 7.4007(b)(2).

However, with respect to federal preemption issues, this Court is not bound by California state court decisions. Moreover, the presumption against federal preemption is "not triggered when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). The Ninth Circuit has held that the field of

banking, in which Congress has legislated "from the days of *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 325–26, 426–27, 4 L.Ed 579 (1819)," is such an area wherein this presumption does not operate. *Bank of Am. v. City & County of S.F.,* 309 F.3d 551, 558 (9th Cir.2002); *accord Wells Fargo Bank N.A. v. Boutris,* 419 F.3d 949, 957 (9th Cir.2005) ("the usual presumption against federal preemption of state law is inapplicable to federal banking regulation.").

The Court finds that plaintiff's state law claims, which are all based on the amount of and means of disclosure of NSF/OD fees assessed by defendants, are preempted by 12 C.F.R. § 7.4002. Section 7.4002(a) specifically provides that "[a] national bank may charge its customers non-interest charges and fees, including deposit account service charges." Additionally, the regulations permit national banks to establish the amounts charged "according to sound banking judgment and safe and sound banking principles," taking into account factors including "(i) [t]he cost incurred by the bank in providing the service; (ii)[t]he deterrence of misuse by customers of banking services; (iii)[t]he enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and (iv)[t]he maintenance of the safety and soundness of the institution." 12 C.F.R. § 7.4002(b). Therefore, to the extent plaintiff contends that defendants' conduct constitutes unfair or deceptive business practices pursuant to the UCL and the CLRA, these claims are in conflict with the NBA and the regulations promulgated thereunder. *Bank of Am. v. City & County of S.F.,* 309 F.3d 551, 561 (9th Cir.2002) ("state attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the National Bank Act, or impair the efficiency of national

banks to discharge their duties.") (*citing First Nat. Bank v. California,* 262 U.S. 366, 369, 43 S.Ct. 602, 67 L.Ed. 1030 (1923)); *see also, Martinez v. Wells Fargo Bank, N.A. et al.,* 2007 WL 963965, *8 (N.D.Cal. March 30, 2007) (holding that plaintiffs' claims against defendant banks for charging real estate transaction fees are preempted by the NBA and 12 C.F.R. § 7.4002). As such, plaintiff's attempt to require defendants to set overdraft fees in a manner that conflicts with the NBA and the regulations promulgated thereunder necessitates the conclusion that plaintiff's claims are barred by the doctrine of conflict preemption. Similarly, to the extent plaintiff's state law claims are based upon defendants' alleged improper disclosure of the NSF/OD fee structure, these claims are expressly preempted by 12 C.F.R. § 7.4007, providing that "[a] national bank may exercise its deposit-taking powers *without regard to state law limitations* concerning ... disclosure requirements." 12 C.F.R. § 7.4007(b)(2)(iii) (emphasis added).

Accordingly, the Court GRANTS defendants' motion to dismiss.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS defendants' motion to dismiss. Plaintiff is granted 20 days' leave to file a first amended complaint curing the defects noted herein.

IT IS SO ORDERED.