**Casey WHITE and Emily White, individually and on behalf of others similarly situated, Plaintiffs,**

v.

**WACHOVIA BANK, N.A., Defendant.**

**Civil Action No. 1:08–CV–1007–BBM.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 2, 2008.

Edward Adam Webb, G. Franklin Lemond, Jr., The Webb Law Group, LLC, Atlanta, GA, for Plaintiffs.

Lynette Eaddy Smith, Stephen William Riddell, Troutman Sanders, Atlanta, GA, for Defendant.

## ORDER

BEVERLY B. MARTIN, District Judge.

This putative class action alleging deceptive business practices is before the court on the Motion to Dismiss [Doc. No. 4], filed by Defendant Wachovia Bank, N.A. ("Wachovia").

### I. Background

On a motion to dismiss, the court accepts as true all factual allegations set out in the Plaintiffs' Complaint. *See Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir.2002). The court may also consider facts from certain undisputed documents integral to the Plaintiffs' Complaint and attached to the Motion to Dismiss.[1] *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). Except as otherwise noted, the following facts are taken from Plaintiffs' February 8, 2008 Class Action Complaint (the "Complaint"). Therefore, the following account does not constitute findings of fact by the court.

Plaintiffs Casey White and Emily White opened a joint checking account with Wachovia on April 5, 2007 after having maintained at least one other checking account with Wachovia for several years.[2] They

---

1. Wachovia attached to the Motion to Dismiss a document entitled "Deposit Agreement and Disclosures for Personal Accounts Effective February 9, 2007." (Ex. A to Mot. to Dismiss.) This document is central to at least two of Plaintiffs' claims. Indeed, Plaintiffs quote its language in support of their unconscionability claim. (Pls.' Class Action Compl. ¶ 44.) Although the attached signature pages for the accounts are dated prior to the opening of the account at issue in this lawsuit, Plaintiffs have not disputed the content, authenticity or accuracy of the Deposit Agreement. Insofar as Plaintiffs quote its language and do not dispute its applicability in re- sponse to the Motion to Dismiss, the court considers it in ruling on the Motion to Dismiss.

2. Plaintiffs never describe the account opened on April 5, 2007 as a joint account, but the court infers this fact from their Complaint, which refers to one account for both Plaintiffs. Additionally, Plaintiffs state that they "have had a checking account with Wachovia for several years." (Compl. ¶ 8.) The Complaint does not clearly allege whether, prior to opening the account on April 5, 2007, Plaintiffs maintained separate checking accounts, a joint checking account, or both.

executed a standard Deposit Agreement that reads, in part:

> We [Wachovia] may pay checks or other items drawn upon your account ... in any order determined by us, even if (1) paying a particular check or item results in an insufficient balance in your account to pay one or more other checks or other items that otherwise could have been paid out of your account; or (2) using a particular order results in the payment of fewer checks or other items or the imposition of additional fees. Although we generally pay larger items first, we are not obligated to do so and, without prior notice to you, we may change the order in which we generally pay items.

(Deposit Agreement, Ex. A to Mot. to Dismiss ¶ I.D.12.) It further states that Wachovia may choose not to honor a transaction that would overdraw the account, or "[a]lternatively, ... may honor the [transaction] and create an overdraft and impose a service charge for paying the overdraft." (*Id.* ¶ I.D.13.)

Plaintiffs generally claim that Wachovia delays, reorders, or otherwise manipulates posting transactions to an account and imposes overdraft fees even where the account contains sufficient funds to pay a draft. According to Plaintiffs, Wachovia "routinely enforces a policy whereby charges incurred are posted to consumers' accounts in order of largest to smallest amounts, even where larger charges are received days after smaller charges." (Compl.¶ 9.) Plaintiffs contend that as a result, overdraft fees are imposed even where there are sufficient funds in the account to cover the transaction. As an example, Plaintiffs describe the six charges posted to their account between November 2, 2007 and November 8, 2007. On November 2, 2007, when Plaintiffs' account had a balance of $52.54, three check card transactions totaling $16.06 were posted from transactions that took place on October 31, 2007 and November 1, 2007.[3] This left a positive balance of $36.48. Despite the positive balance, Wachovia levied three Overdraft/Unavailable Funds Fees ("Overdraft Fees") totaling $105.00 on November 2, 2007, which resulted in a balance of -$68.52.[4] On November 5, 2007, Wachovia posted two charges from transactions that took place on November 2, 2007 that totaled $36.72[5] and two additional Overdraft Fees totaling $70.00. After these items were posted, Plaintiffs' account had a balance of -$175.24.[6] On November 8, 2007, Wachovia

---

The signature pages to the Deposit Agreement, titled "Customer Access Agreement," indicate that each Plaintiff may have maintained an individual checking account, as they were signed by the corresponding Plaintiff several months apart and list different addresses. However, the court cannot conclusively make such a determination on the record before it.

3. The October 31, 2007 transaction was in the amount of $7.12. (Compl.¶ 17.) Although the Complaint does not state the amounts of the two November 1 transactions posted on November 2, those two transactions totalled $8.94.

4. -$68.52 is equivalent to $36.48 (the positive balance Plaintiffs' account would have had

after subtracting the November 2, 2007 charges) minus $105.00 (the overdraft fees imposed on November 2, 2007). On the Motion to Dismiss, Wachovia has not offered an explanation for its imposition of overdraft charges when Plaintiffs' account had a positive balance. Rather, it "denies that Plaintiffs have accurately described ... Wachovia's practices." (Br. in Supp. of Mot. to Dismiss 2 n. 1.)

5. These two transactions were in the amounts of $27.00 and $9.72. (Compl.¶ 17.)

6. -$175.24 is equivalent to -$68.52 (Plaintiffs' account balance after November 2, 2007) minus $106.72 ($36.72 in transactions and $70.00 in overdraft fees).

posted a charge of $21.36 from a transaction that took place on November 1, 2007, and a corresponding Overdraft Fee of $35.00. As a result, Plaintiffs' account balance on November 8, 2007 was -$231.60. On November 19, 2007, Wachovia transferred $231.60 from another of Plaintiffs' accounts to satisfy this amount.[7] Plaintiffs point out that the two largest transactions during this period were in the amounts of $21.36 and $27.00, which equals $48.36, less than Plaintiffs' account balance of $52.54. Even if Wachovia posted the transactions from largest to smallest over this period, no overdraft would have resulted until the third largest transaction was posted. Nonetheless, each transaction resulted in a separate Overdraft Fee.

Plaintiffs originally filed this lawsuit as a class action in the Superior Court of Fulton County on February 8, 2008. Wachovia removed it to this court on March 14, 2008 under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1453(b). In their Complaint, Plaintiffs allege that Wachovia has engaged in unfair or deceptive business practices with the potential to harm the consumer public in violation of the Georgia Fair Business Practices Act, O.C.G.A. §§ 10–1–390 et seq. (the "FBPA"). They seek individual relief for FBPA violations, in the form of an injunction and treble damages. Plaintiffs also raise several claims on behalf of themselves and those similarly situated. First, they allege that Wachovia has breached its contract with its accountholders by failing to perform its contractual duties in good faith in violation of the common law and O.C.G.A. § 13–4–20.[8] Second, they contend that paragraph I.D.13 of the Deposit Agreement is unconscionable under O.C.G.A. § 11–2–302. Third, Plaintiffs assert a claim of trover and conversion. Fourth and finally, Plaintiffs assert a claim for unjust enrichment and money had and received. Wachovia moved to dismiss all claims on March 20, 2008.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. To withstand a motion to dismiss, a complaint need not contain "detailed factual allegations," but must " 'give the defendant

---

**7.** Plaintiffs mention this fact in connection with their argument that "[i]f Wachovia was authorized to transfer funds from one of Plaintiffs' accounts to the other, then Wachovia would also have been authorized to transfer funds at the time of the deficiency in order to prevent Plaintiffs' account from being overdrawn." (Compl.¶ 19.) A portion of the Deposit Agreement reads:

> If overdraft protection is available, and if you have elected that option, we will automatically transfer funds, sufficient to cover the amount of any overdraft and service charge, to your primary checking account from any other eligible secondary deposit account ... or credit account ... you selected. One transfer will be made at the end of the business day in which an overdraft occurs....

(Deposit Agreement ¶ I.D.14.) Plaintiffs' allegations are conditional; that is, they do not assert either that they have selected overdraft protection such that this provision would apply or that they have not selected overdraft protection and any transfer of funds was unauthorized. If Plaintiffs wish to claim that Wachovia breached paragraph I.D.14, they must further allege that they have elected overdraft protection such that that paragraph would apply. However, the court does not understand Plaintiffs to base any of their claims on this allegation alone, so the court will merely consider it in conjunction with their other allegations.

**8.** That section reads: "Performance, to be effectual, ... must be substantially in compliance with the spirit and the letter of the contract and completed within a reasonable time." O.C.G.A. § 13–4–20.

fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, the court must determine whether Plaintiffs "ha[ve] alleged enough facts to suggest, raise a reasonable expectation of, and render plausible" their claims. *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1296 (11th Cir. 2007). The court construes the Complaint in Plaintiffs' favor, and accepts the facts they allege as true. *M.T.V. v. DeKalb County Sch. Dist.,* 446 F.3d 1153, 1156 (11th Cir.2006). However, "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1965. Thus, a wholly conclusory statement of a claim cannot, without more, survive a motion to dismiss. *See Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.,* 500 F.3d 1293, 1303 (11th Cir.2007) (citing *Twombly,* 127 S.Ct. at 1968).

## III. Analysis

### A. Breach of Contract Claim

Wachovia first moves to dismiss Plaintiffs' breach of contract claim, based on the implied covenant of good faith. According to the Georgia Supreme Court, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Brack v. Brownlee,* 246 Ga. 818, 820, 273 S.E.2d 390, 392 (1980). A Georgia statute provides that "to be effectual," performance of a contract "must be substantially in compliance with the spirit and the letter of the contract and completed within a reasonable time." O.C.G.A. § 13–4–20. Wachovia argues, however, that "[t]here can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Automatic*

*Sprinkler Corp. of Am. v. Anderson,* 243 Ga. 867, 868, 257 S.E.2d 283, 284 (1979); *Marathon U.S. Realties, Inc. v. Kalb,* 244 Ga. 390, 392, 260 S.E.2d 85, 87 (1979) (citation and internal quotations omitted). Wachovia contends that Paragraphs I.D.12 and I.D.13 of the Deposit Agreement explicitly allow Wachovia to: (1) pay items drawn on an account in any order; and (2) honor transactions on an overdrawn account and impose a fee on the accountholder.

Plaintiffs counter that Wachovia has not exercised its implied duty of good faith in *performing* those contractual obligations. "[W]here the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith." *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.,* 281 Ga.App. 450, 452, 636 S.E.2d 139, 141 (2006) (citation, internal quotations, and emphasis omitted); *Camp v. Peetluk,* 262 Ga.App. 345, 350, 585 S.E.2d 704, 708 (2003) (citation and internal quotations omitted). They contend that Wachovia has failed to exercise good faith when exercising its discretion to determine the order in which transactions are paid, and as such has breached the contract provisions *de facto* even if it maintained performance *de jure. See Stuart Enters. Int'l, Inc. v. Peykan, Inc.,* 252 Ga.App. 231, 233–34, 555 S.E.2d 881, 884 (2001) ("The 'covenant' to perform in good faith ... is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure.*") (citation and internal quotations omitted). Plaintiffs also contend that imposing Overdraft Fees when an account contains sufficient funds contravenes the Deposit Agreement as modified by the implied duty of good faith.

■ Plaintiffs' allegations state a plausible claim for breach of the implied covenant of good faith in connection with Paragraphs I.D.12 and I.D.13 of the Deposit Agreement.[9] Although discovery may make clear that Wachovia complied with those paragraphs in good faith, Plaintiffs have sufficiently alleged otherwise. The court cannot find as a matter of law that the Deposit Agreement's statement that Wachovia "may" post items "in any order" (Deposit Agreement ¶ I.D.12) expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, and maximize overdraft fees in the ways the Complaint alleges. *See Hunting Aircraft*, 281 Ga.App. at 452, 636 S.E.2d at 141. (" 'Good faith' and 'reasonableness' do not comprehend arbitrary or capricious reasons, or considerations based on pecuniary gain, or merely personal preferences; rather, they refer to 'considerations of fairness and commercial reasonableness.' ") (citation and internal quotations omitted). The relevant paragraphs of the Deposit Agreement outline how Wachovia will carry out its obligation to pay checks or other withdrawals from an account, and confer discretion to Wachovia as to the manner of performing this obligation. Plaintiffs state that in implementing these provisions, Wachovia uses a policy whereby larger charges received "days after" smaller charges are posted first. (Compl. ¶ 9.) Based upon the pleadings before it, the court is not prepared to hold, as a matter of law, that such a policy constitutes a good faith exercise of Wachovia's discretion. Said another way, Plaintiffs have stated a claim that Wachovia did not exercise good faith in charging six overdraft fees for six transactions over a period during which, even if the six transactions were posted in order from largest to smallest, at most three overdraft fees should have been imposed. (*Cf.* Compl. ¶ 17 (noting that if the November 2 transactions were posted largest to smallest, at most two overdraft fees should have been imposed).) Whether Wachovia performed paragraph I.D.12 and I.D.13 in good faith is a fact question that cannot be resolved at this stage.

■ The *Automatic Sprinkler* exception whereby no duty of good faith applies where contracts expressly reserve complete discretion is inapplicable here. If an agreement "by its express terms grants a party absolute or uncontrolled discretion in making a decision, then no duty of good faith is implied as to that decision." *Hunting Aircraft*, 281 Ga.App. at 453, 636 S.E.2d at 141–42 (citing *Automatic Sprinkler*, 243 Ga. at 868–69, 257 S.E.2d at 284–85). Although paragraph I.D.12 and

---

**9.** Wachovia correctly notes that Georgia law does not provide for an independent cause of action for breach of the common law covenants of good faith and fair dealing absent some allegation of a breach of an express contract provision. However, Plaintiffs do allege that Wachovia failed to exercise in good faith the discretion conferred to it by Paragraphs I.D.12 and I.D.13 of the Deposit Agreement, and by doing so, breached those provisions *de facto*. The *Stuart* case, cited above, supports a cause of action under these circumstances even where Wachovia performed according to the terms *de jure*.

The court is aware that Plaintiffs' Complaint does not specifically refer to Paragraphs I.D.12 and I.D.13 in connection with its breach of contract claim, but its allegations put Wachovia on sufficient notice that those provisions—regarding posting order and overdraft fees—are the breached provisions. In their response brief, Plaintiffs further clarify that their breach of contract claim is "tied to the express provisions found within the Deposit Agreement relating to the order in which transactions are posted to Plaintiffs' account and the determination of when accounts have sufficient funds to cover transactions." (Resp. in Opp'n to Def.'s Mot. to Dismiss 10.)

I.D.13 clearly confer some discretion, the court finds no *absolute* or *uncontrolled* discretion so as to obviate the good faith requirement. *Contra Automatic Sprinkler*, 243 Ga. at 869, 257 S.E.2d at 285 (distinguishing "[t]he absolute nature of the language" of the contract in that case from "the more ambiguous language" in another case).[10] Rather, the Deposit Agreement states that Wachovia "may" post transactions in any order. (Deposit Agreement ¶ I.D.12.) Under Georgia law, the court may not infer absolute discretion from such a provision:

The principle is that the duty of good faith is implied in all contracts, which is the overarching presumption. The exception to this general rule occurs only if the contract expressly (not impliedly) provides otherwise. We decline the [defendant's] invitation to use an inference or implication to substitute for the Supreme Court of Georgia's requirement of express language.

*Hunting Aircraft*, 281 Ga.App. at 453, 636 S.E.2d at 142.

Therefore, the court allows the breach of contract claim to proceed.[11] The claim

---

10. The contract in *Automatic Sprinkler* read that the "award of any direct incentive compensation is *entirely* within the discretion of the corporation." *Automatic Sprinkler*, 243 Ga. at 869, 257 S.E.2d at 285 (citation and internal quotations omitted, emphasis added). The Georgia Supreme Court contrasted that language from the "more ambiguous" contract language interpreted in *Montgomery Ward & Co. v. Reich*, 131 Colo. 407, 409, 282 P.2d 1091, 1092 (1955): "[Y]our eligibility for Extra Compensation and the amount thereof, if any, shall be at the discretion of a Bonus Committee.... The decision of the Bonus Committee shall be final and binding." (citation and internal quotations omitted). The *Montgomery Ward* court concluded that that provision implied "that the bonus committee will act upon a sound judgment and it is, of course, precluded from arbitrary or oppressive action." *Id.* at 412, 282 P.2d at 1093. According to the distinction drawn by the Georgia Supreme Court in *Automatic Sprinkler*, the discretionary language in the Deposit Agreement more closely resembles the "more ambiguous" language in *Montgomery Ward* than the absolute language in *Automatic Sprinkler* and does not confer total discretion.
 In *Lucius v. Micro General Corp.*, this court (Thrash, J.) applied *Automatic Sprinkler* and found that "there can be no breach of an implied covenant of good faith, as a party to a contract has done what the provisions of the contract expressly give him the right to do." No. 1:03–CV–1270–TWT, 2004 WL 1598813, at *2 (N.D.Ga. Apr. 8, 2004) (internal quotations omitted). The agreement in *Lucius*, at least the quoted portions, contained no expression of the absolute nature of the discretion. However, the plaintiff in *Lucius* conceded that "the Agreement afforded the Administrator the authority and unfettered discretion to cancel the Plaintiff's stock options prior to their vesting." *Id.*

11. The court finds Wachovia's other case citations inapposite. In particular, the Sixth Circuit case of *Davis v. Sears, Roebuck & Co.*, 873 F.2d 888 (6th Cir.1989) (interpreting Georgia law) is distinguishable. That court found the duty of good faith inapplicable to a termination provision that read simply: "Either party may terminate this Agreement by giving written notice to the other party not less than sixty (60) days prior to the conclusion of the term of this Agreement or of any renewal period." *Id.* at 893 (citation and internal quotations omitted). The court notes that the Sixth Circuit specifically addressed "reconcil[ing] the duty of good faith inherent in every contract with express contractual provisions *governing termination.*" *Id.* at 894 (emphasis added). Therefore, *Davis* is of limited persuasive authority in this case. But to the extent that *Davis* governs the provisions at issue, the *Davis* court distinguished other cases that applied a duty of good faith on the ground that "the termination rights under [the relevant section] of the parties' Agreement were equally available to both [parties]. Hence, Sears did not have a unilateral contractual right determinative of Davis' degree of performance." *Id.* at 895. This case is more analogous with the cases that *do* impose a good faith requirement where one party has a unilateral right. *See, e.g., Am. Game & Music Serv., Inc. v. Knighton*, 178 Ga.App. 745, 745–46, 344 S.E.2d 717, 719 (1986) (im-

may not survive the summary judgment stage, however, if discovery establishes that Wachovia's ordering of the transactions and charging of overdraft fees was commercially reasonable. *See Hunting Aircraft,* 281 Ga.App. at 452, 636 S.E.2d at 141.

### B. Preemption of Remaining State Law Claims

Wachovia argues that the National Bank Act and implementing regulations conflict with, and therefore preempt Plaintiffs' remaining state law claims. Wachovia primarily relies on 12 C.F.R. § 7.4002, 12 C.F.R. § 7.4007, and an Office of Comptroller of Currency ("OCC") Interpretive Letter dated May 22, 2001 (the "OCC Letter"). 12 C.F.R. § 7.4002 states, in part: "The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." 12 C.F.R. § 7.4002(b)(2). That regulation then lists several factors to be considered in order to conform with safe and sound banking principles.[12] The OCC Letter states that a practice of posting transactions from largest to smallest in a given 24–hour cycle is consistent with 12 C.F.R. § 7.4002(a) when the relevant safe and sound banking principles are considered.

 With regard to preemption, 12 C.F.R. § 7.4002(d) states: "The OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees described in this section." Additionally, 12 C.F.R. § 7.4007(b)(1) states that "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized deposit-taking powers are not applicable to national banks." 12 C.F.R. § 7.4007(b)(2) provides that "a national bank may exercise its deposit-taking powers without regard to state law limitations concerning . . . [c]hecking accounts [or][d]isclosure requirements." As Wachovia points out, the ordinary presumption against preemption does not apply in the area of national banking. *Barnett Bank, N.A. v. Nelson,* 517 U.S. 25, 32, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) (holding that grants of powers to national banks "ordinarily preempt[ ] *contrary* state law" (citation and internal quotations omitted, emphasis added)). In Wachovia's view, reading 12 C.F.R. § 7.4007 in conjunction with 12 C.F.R. § 7.4002 as interpreted by the OCC Letter, Plaintiffs' claims are preempted.

At least at this stage, this court is unprepared to hold that the state laws under which Plaintiffs assert their claims are contrary to federal banking law. *See Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 127 S.Ct. 1559, 1567, 167 L.Ed.2d 389 (2007) ("Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the [National Bank

---

posing good faith requirement where contract gave one party unilateral right to terminate if unsatisfied with income). This is because the provisions at issue address an obligation that is uniquely Wachovia's—to debit an account through checks, wire transfers, and other withdrawals.

12. Specifically, "[t]he cost incurred by the bank in providing the service," "[t]he deterrence of misuse by customers of banking services," "[t]he enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy," and "[t]he maintenance of the safety and soundness of the institution." 12 C.F.R. § 7.4002(b)(2)(i)-(iv).

Act]."). The court now considers Wachovia's arguments as to federal preemption.

### 1. 12 C.F.R. § 7.4007

■ The court is not now persuaded that 12 C.F.R. § 7.4007 requires preemption of Plaintiffs' state law claims. Indeed, 12 C.F.R. § 7.4007(c) expressly provides that state laws on the subjects of contracts and torts are "not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' deposit-taking powers." Few courts have interpreted the preemption provisions of 12 C.F.R. § 7.4007. Of those that have, some have declined to dismiss state contract, tort, and deceptive trade practices claims similar to those at issue here. *Great W. Res., LLC v. Bank of Ark., Nat'l Ass'n,* No. 05–5152, 2006 WL 626375, at *3–4 (W.D.Ark. Mar. 13, 2006) (declining to dismiss breach of contract, Arkansas Deceptive Trade Practices Act, conversion, and breach of implied covenant of good faith claims on grounds of preemption); *Hood v. Santa Barbara Bank & Trust,* 143 Cal.App.4th 526, 543, 49 Cal.Rptr.3d 369 (2006) ("Based on the record before us, it does not appear that the state's contract, tort or debt collection laws have more than an incidental effect on the exercise of national banks' deposit-taking ... powers or are otherwise inconsistent with the banks' deposit-taking ... powers."). Plaintiffs' claims that Wachovia charged overdraft fees when there was actually money in the account sufficient to pay their drafts, sound in tort and contract. Based upon the record now before it, the court finds that Plaintiffs' exercise of their rights under Georgia contract and tort law does not more than incidentally affect Wachovia's deposit-taking powers. As such, to the extent Plaintiffs' claims relate to Wachovia's deposit-taking powers, they fall within 12 C.F.R. § 7.4007(c) as opposed to 12 C.F.R. § 7.4007(b), and are not preempted.

### 2. 12 C.F.R. § 7.4002

■ Neither does 12 C.F.R. § 7.4002 now warrant a finding that Plaintiffs' state claims are preempted. That regulation would preempt, for example, a state law that placed a cap on the dollar amount to be charged in connection with an overdraft fee. *Cf. Bank of Am., N.A. v. Sorrell,* 248 F.Supp.2d 1196, 1199–1200 (N.D.Ga.2002) (Tidwell, J.) (in action by bank against Georgia Department of Banking and Finance, enjoining the Department from enforcing state statutes prohibiting bank from charging fees to non-accountholders for cashing checks). However, the court does not read 12 C.F.R. § 7.4002 to authorize banks to impose an overdraft fee when an account is not in fact overdrawn. As such, contract and tort claims alleging that a bank did exactly that are not inconsistent with Section 7.4002. Plaintiffs' state law claims of improper overdraft fees and an improperly implemented posting policy present no conflict with 12 C.F.R. § 7.4002 and therefore survive Wachovia's preemption defense on a motion to dismiss. *See Watters,* 127 S.Ct. at 1567.

Wachovia cites *Montgomery v. Bank of America Corp.,* 515 F.Supp.2d 1106, 1113 (C.D.Cal.2007), which dismissed the plaintiff's state law claims "based on the amount of and means of disclosure of [Overdraft Fees] assessed by defendants" on the ground that 12 C.F.R. § 7.4002 preempted those claims. Although the *Montgomery* court concluded that dismissal was proper, it did not explain what allegations were at issue other than to state that "[t]he gravamen of plaintiff's complaint is that [defendant] failed to disclose adequately the Nonsufficient Funds/Overdraft Fees policy." *Montgom-*

*ery,* 515 F.Supp.2d at 1108. This *Montgomery* claim differs from those being asserted here. The primary basis for Plaintiffs' claims is that Wachovia maintains a policy of charging overdraft fees even where there are funds in an account sufficient to cover a transaction. Plaintiffs also claim that Wachovia delays posting transactions for days after they are received. While the lawsuit may incidentally implicate Wachovia's largest-to-smallest transaction posting policy, it more importantly claims that Wachovia's policy allows the routine imposition of an overdraft fee for transactions that do not result in an actual overdraft.[13] This allegation, which forms the basis for all of its claims, is not of a regulatory nature that would subject it to federal preemption. *See Watters,* 127 S.Ct. at 1567; *Hood,* 143 Cal.App.4th at 543 n. 8, 49 Cal.Rptr.3d 369 (interpreting 12 C.F.R. § 7.4007); *contra Sorrell,* 248 F.Supp.2d at 1199.

### 3. The OCC Letter

Neither does the OCC Letter, which responded to a query by a bank doing business in California, change this result. That bank asked for the OCC's interpretation of federal law in light of the following comment to the California Commercial Code that restricted a bank's discretion to post items "in any order":

'The only restraint on the discretion given to the payor bank ... is that the

bank act in good faith. For example, the bank could not properly follow an established practice of maximizing the number of returned checks for the sole purpose of increasing the amount of returned check fees charged to the customer. On the other hand, the bank has the right to pay items for which it is itself liable ahead of those for which it is not.' (OCC Letter 2 (quoting Commentary to Cal. Comm.Code § 4303(b) (West 2001)).) The bank wished to change its check-posting practice "to post checks so that the largest check to be paid from an account would be paid first in a given 24–hour cycle." (*Id.*) It "offered several reasons for this decision, including the benefits of a standardized approach ... and the effect that the 'high-to-low' check posting order would have on [its] revenues." (*Id.*) The OCC found that Section 7.4002(a) was consistent with the California Code Commentary's good faith requirement. After reviewing the bank's "analysis and supporting documentation demonstrating that [it had] considered each of the four factors listed in § 7.4002(b)(1)-(4)" (*id.* at 4) pertaining to safe and sound banking principles, the OCC concluded that § 7.4002 authorized the bank's desired practice.

The letter on its face does not speak to whether claims that sound in tort or contract and allege improper overdraft charges are preempted by § 7.4002. It ex-

---

**13.** Wachovia asserts that "Plaintiffs' argument in their brief that they were charged insufficient funds fees even though they had sufficient funds to cover the transactions at issue is simply another way of attacking Wachovia's alleged posting order." (Reply Br. in Supp. of Mot. to Dismiss at 8 n. 1.) This court clearly understands that it has no role in deciding for any bank the order in which to post transactions in a checking account on a given day. However the court must now accept all of Plaintiffs' claims as true. Plaintiffs allege that "even if the November 2, 2007

transactions were deducted in order of largest to smallest," too many overdraft charges were imposed. (Compl. ¶ 17.) In the interest of testing Plaintiffs' allegations for itself, the court did its own calculation which shows that even if the transactions were posted in order of largest to smallest over the entire period from November 1 to November 8, Wachovia imposed too many Overdraft Fees because the account had sufficient funds to cover the two largest transactions. (Compl. ¶ 11.) If discovery disproves Plaintiffs' allegations as stated, the action will not survive.

pressly "[did] not address the applicability ... of the standard articulated in the [California Code] Commentary." (*Id.*) However, in its implicit attempt to reconcile that Commentary with § 7.4002, the letter illustrates that compliance with state regulation is required when state and federal law do not conflict. *See Watters*, 127 S.Ct. at 1567. Additionally, the OCC Letter emphasizes that to comply with § 7.4002, a bank must justify its check-posting policy by considering the listed factors. The court is not inclined to dismiss Plaintiffs' claims as preempted before the parties have developed record evidence on this point.[14]

After considering the sources Wachovia cites and accepting all of Plaintiffs' allegations as true, Plaintiffs' state law claims do not conflict with the relevant federal laws and regulations and are not subject to preemption. The court now so finds even though the ordinary presumption against preemption does not apply here. The court declines to dismiss Plaintiffs' claims on grounds of federal preemption at this time, but may later revisit the preemption issue as to some or all of Plaintiffs' claims

if discovery establishes that no improper overdraft charges were imposed or that this lawsuit has more than an incidental effect on any of Wachovia's deposit-taking powers.[15] *See Hood*, 143 Cal.App.4th at 543 n. 8, 49 Cal.Rptr.3d 369. (stating that if dismissal were upheld "on the ground that appellants' pursuit of their claims would have more than an incidental effect on respondent['s] exercise of its authorized powers without requiring the consideration of evidence from the parties relevant to such effect, it seems that national banks could avoid state law compliance and state court process in nearly any case").

### C. FBPA Claim

■ The Complaint states a plausible claim under the FBPA. If Plaintiffs' allegations are true, Wachovia charges consumers insufficient funds fees in connection with transactions for which the account had sufficient funds to cover. Wachovia allegedly shrouds this practice in a broadly worded "largest-to-smallest" transaction posting policy, unqualified by time limits or other restrictions.[16] If these allegations are true, they fall within the type of unfair or deceptive business practice covered by

14. The court notes that Wachovia's largest-to-smallest posting policy is not alleged to contain any time limits thereby differing in a significant way from the policy of the bank which requested the OCC Letter. That bank sought to post checks largest to smallest *within a given 24–hour period.*

15. To the extent Plaintiffs assert that Wachovia does not adequately disclose its check-posting policy, those claims may well be preempted. *See Montgomery*, 515 F.Supp.2d at 1112 (dismissing claims alleging improper disclosure of overdraft fees on grounds of preemption because 12 C.F.R. § 7.4007 states that "[a] national bank may exercise its deposit-taking powers without regard to state law limitations concerning [d]isclosure requirements") (internal quotations omitted). Plaintiffs' disclosure-related allegations are intertwined with their claims that some of the overdraft fees were altogether improper. As

a whole, the claims Plaintiffs have stated are plausible based on the facts alleged, so the court will not dismiss the claims on preemption grounds before any discovery has taken place.

16. Wachovia cites a Tennessee case affirming the trial court's dismissal of claims of unfair and deceptive trade practice in connection with "the way and manner [the bank] handles multiple checks drawn on the plaintiff's checking account and presented for payment on the same banking day when the aggregate of the checks exceeds the balance in the plaintiff's account." *Smith v. First Union Nat'l Bank of Tenn.*, 958 S.W.2d 113, 114 (Tenn. App.1997) (citation and internal quotations omitted). That court relied on a provision of the Tennessee Uniform Commercial Code that provided that "items may be accepted, paid, certified, or charged to the indicated account of its customer in any order convenient to the

the FBPA. *See* O.C.G.A. § 10–1–391 (describing purpose of FBPA); O.C.G.A. § 10–1–393 (declaring "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" unlawful); *Small v. Savannah Int'l Motors, Inc.*, 275 Ga.App. 12, 15, 619 S.E.2d 738, 742 (2005) ("The FBPA forbids and declares unlawful any unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce.") (citation and internal quotations omitted); *contra Eason Publ'ns, Inc. v. NationsBank of Ga.*, 217 Ga.App. 726, 730, 458 S.E.2d 899, 903 (1995) (dismissing claim against bank under FBPA where bank allegedly paid forged items, because the bank's "commercial checking accounts were not offered to consumers, [so] its practices concerning those accounts are outside the consumer marketplace, and the FBPA does not apply"). The FBPA provides for a private right of action to "[a]ny person who suffers injury or damages as a result of a violation" of the FBPA. O.C.G.A. § 10–1–399.[17] As Plaintiffs have alleged a plausible FBPA violation that caused injury to them, dismissing Plaintiffs' FBPA claim before discovery would be premature.

### D. Unconscionability

 Wachovia asks the court to dismiss Plaintiffs' unconscionability claim. A court must decide as a matter of law whether a contract is unconscionable as of the time it was made. O.C.G.A. § 11–2–302; *NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 394–95, 478 S.E.2d 769, 773 (1996). To find unconscionability under Georgia law, "most courts seem to requires a certain quantum of procedural plus a certain quantum of substantive unconscionability." *NEC Techs*, 267 Ga. at 394 n. 6, 478 S.E.2d at 773 n. 6. When considering substantive unconscionability, the court considers the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of risks between the parties, and whether the contract contravenes public policy. *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 876 (11th Cir.2005).

 In urging the court to find the cited portion of the Deposit Agreement unconscionable, Plaintiffs' argument is in tension with its argument that Wachovia has breached its duty of good faith and fair dealing in connection with that provision and others. The court finds the latter argument persuasive for now, as already explained. Furthermore, there can be no substantive unconscionability because the text of the provision is consistent with a Georgia statute. O.C.G.A. § 11–4–303(b) ("[I]tems may be accepted, paid, certified, or charged to the indicated account of its

bank." *Id.* at 115 (citing T.C.A. § 47–4–303(b) (1994) (internal quotations omitted)). While Georgia law contains a similar UCC provision, O.C.G.A. § 11–4–303(b), this case differs from *Smith* in two ways. First, the *Smith* court expressly addressed the ordering of items "presented for payment on the same banking day." *Smith*, 958 S.W.2d at 114. By contrast, Plaintiffs allege that Wachovia's policy allows them to post items to an account days after they are received in order to impose insufficient funds fees. (Compl.¶ 9.) Second, Plaintiffs contend that Wachovia charged them insufficient funds fees associat-ed with transactions when there were enough funds in the account to cover those transactions. Neither O.C.G.A. § 11–4–303(b) nor the analogous Tennessee statute authorizes this practice. Nor, as explained, does federal law.

17. O.C.G.A. § 10–1–399(b) requires written demand 30 days before filing an FBPA lawsuit. The court will assume, for purposes of this Order, that the demand requirement has been met. In any event, Wachovia has not raised it on the Motion to Dismiss.

customer in any order."); *see also Zepp v. Mayor & Council of Athens,* 180 Ga.App. 72, 78, 348 S.E.2d 673, 678 (1986) ("[T]hat which the law itself specifically permits cannot be 'unconscionable.' "); *BMW Fin. Servs., N.A., Inc. v. Smoke Rise Corp.,* 226 Ga.App. 469, 469, 486 S.E.2d 629, 630 (1997) (an unconscionable contract is "one which no sane man not acting under a delusion would make and no honest man would take advantage of") (citation and internal quotations omitted); *Garbutt v. S. Clays, Inc.,* 894 F.Supp. 456, 464 (M.D.Ga. 1995) (noting that mere disadvantage or hardship on one party does not render a contract unconscionable) (citing *Bright v. Stubbs Props., Inc.,* 133 Ga.App. 166, 167, 210 S.E.2d 379, 380 (1974)). Accordingly, the court dismisses Plaintiffs' unconscionability claim. See *NEC Techs.,* 267 Ga. at 394–96 & n. 6, 478 S.E.2d at 773–74 & n. 6.

### E. Trover and Conversion

 Wachovia moves to dismiss Plaintiffs' trover and conversion claim. "In order to establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *Internal Med. Alliance, LLC v. Budell,* 290 Ga.App. 231, 239, 659 S.E.2d 668, 675 (2008) (citation and internal quotations omitted). The Complaint satisfies these elements. Plaintiffs allege that Wachovia imposed overdraft fees when their account was not actually overdrawn; that Wachovia took money from another of Plaintiffs' accounts to cover the overdraft fee and the purported overdraft; that Plaintiffs demanded that Wachovia credit the improper overdraft fee; and that Wachovia refused to do so. *See Decatur Auto Ctr. v. Wachovia Bank, N.A.,* 276 Ga. 817, 821, 583 S.E.2d 6, 9 (2003) ("Conversion is ... available for ... overdrafts charged by a bank on existing accounts."); *First Union Nat'l Bank of Ga. v. Davies–Elliott, Inc.,* 215 Ga.App. 498, 506, 452 S.E.2d 132, 140 (1994) (affirming denial of motion to dismiss conversion claim as to improper overdraft fee because "if the payment of the check was improper, the overdraft charges were improper"). Wachovia contends that the Deposit Agreement gave it the right to post items to Plaintiffs' account in any order. However, as explained in declining to dismiss the breach of contract claim, Plaintiffs have alleged that Wachovia imposed Overdraft Fees when there was in fact no overdraft. The trover and conversion claim may proceed for now.

### F. Unjust Enrichment

 Finally, Wachovia moves to dismiss the unjust enrichment claim. In Georgia, "[u]njust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract." *St. Paul Mercury Ins. Co. v. Meeks,* 270 Ga. 136, 137, 508 S.E.2d 646, 648 (1998) (citation and internal quotations omitted). In other words, "[a]n unjust enrichment theory does not lie where there is an express contract." *Pryor v. CCEC, Inc.,* 257 Ga. App. 450, 452, 571 S.E.2d 454, 456 (2002); *see also Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.,* 426 F.Supp.2d 1356, 1372 (N.D.Ga.2006) (Thrash, J.) ("[U]njust enrichment is available only when there is no legal contract."). The Deposit Agreement covers Wachovia's posting of transactions and imposition of overdraft fees. Plaintiffs allege that the same behavior underlying their unjust enrichment claim underlies their breach of contract claim. Effectively, Plaintiffs claim that there was a contract and that Wachovia was unjustly enriched within a single count. This is not permissible, and the court must dismiss the unjust enrichment claim. *See Am.*

*Casual Dining,* 426 F.Supp.2d at 1372 ("Although [the plaintiff] argues that it is permissible to assert alternative and inconsistent claims, it cannot claim within a single count that there was an agreement and that the [defendant] was unjustly enriched.").

## IV. Summary

For the foregoing reasons, Wachovia's Motion to Dismiss [Doc. No. 4] is GRANTED as to the unconscionability claim and the unjust enrichment claim only and is DENIED as to all other claims. The parties are ORDERED to begin a four-month discovery period on the remaining claims, which will end on November 3, 2008.