**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARMANDO MARTINEZ; ALINDA
MARTINEZ, on behalf of themselves
and a class of others similarly
situated,

          *Plaintiffs-Appellants,*

          v.

WELLS FARGO HOME MORTGAGE,
INC.; WFC HOLDINGS CORPORATION;
WELLS FARGO & COMPANY; WELLS
FARGO FINANCIAL SERVICES, INC.,

          *Defendants-Appellees.*

No. 07-17277

D.C. No.
CV-06-03327-
RMW/RS

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
December 9, 2009—San Francisco, California

Filed March 9, 2010

Before: Mary M. Schroeder and Consuelo M. Callahan,
Circuit Judges, and Barbara M.G. Lynn,* District Judge.

Opinion by Judge Lynn

---

*The Honorable Barbara M.G. Lynn, United States District Judge for
the Northern District of Texas, sitting by designation.

## COUNSEL

Timothy G. Blood, Joseph D. Daley, Leslie E. Hurst, and Thomas J. O'Reardon II, Coughlin Stoia Geller Rudman & Robbins LLP, on behalf of plaintiffs-appellants Armando and Alinda Martinez.

Robert B. Bader, Thomas M. Hefferon, and William F. Sheehan, Goodwin Procter LLP, on behalf of defendants-appellees

Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc., Wells Fargo Financial Services, Inc., and Wells Fargo Real Estate Tax Services, LLC.

## OPINION

LYNN, District Judge:

## I.   Introduction

Plaintiffs Alinda and Armando Martinez (the "Martinezes") seek review of the dismissal of their claims under Section 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b), and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* The Martinezes contend that RESPA Section 8(b)'s prohibition against "unearned fees" reaches the "overcharging" allegedly committed by Wells Fargo in this case. They also argue that Wells Fargo's conduct was "unfair," "fraudulent" and "illegal," all in violation of the UCL.

We affirm the dismissal of the RESPA claim because the clear and unambiguous language of RESPA Section 8(b) does not reach the practice of "overcharging." We affirm the dismissal of the three UCL state law claims because the claims alleging "unfair" and "fraudulent" conduct are preempted by the National Bank Act, and because the allegations of "illegal" conduct fail to state a claim.

## II.   Facts and Procedural Background

According to the complaint, the Martinezes refinanced their California home mortgage loan through Wells Fargo. Wells Fargo charged the Martinezes an underwriting fee of $800 for the refinancing.[1] The Martinezes allege that this fee was

---

[1]"Underwriting" analyzes the risk involved in making a loan, to determine whether that risk is acceptable to the lender.

excessive because it was not reasonably related to Wells Fargo's actual costs of performing the underwriting, and thus violated RESPA Section 8(b) and California's UCL. This allegation of excessive fees is also referred to as an "over-charge."[2]

The Martinezes first sought to intervene in an earlier lawsuit filed in New York, in which identical claims were being alleged against Wells Fargo. The New York district court dismissed the case. *See Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 54 (2d Cir. 2004) (discussing the district court's decision, which was delivered orally from the bench). On appeal, the Second Circuit affirmed in part and remanded, holding that RESPA Section 8(b) clearly and unambiguously does not apply to excessive fees charged by a lender. *See id.* at 56, 62. On remand, the Martinezes attempted to intervene. The district court denied intervention. *See Kruse v. Wells Fargo Home Mortgage, Inc.*, No. 02-3089, 2006 U.S. Dist. LEXIS 26092, at *12-21 (E.D.N.Y. May 3, 2006).

The Martinezes then brought this action on behalf of a nationwide class of similarly situated home mortgage borrowers,[3] alleging that Wells Fargo marked up certain charges and overcharged for services in connection with mortgage loans, in violation of federal and state law.

The district court granted Wells Fargo's motion to dismiss the claims for RESPA overcharge and UCL violations. It held, as to the RESPA claim, that even if Wells Fargo had overcharged the Martinezes for its services, it did not violate

---

[2]The Martinezes also contend that the $75 Wells Fargo charged them for tax services provided by its affiliate was more than what the affiliate had charged Wells Fargo, in violation of RESPA Section 8(b) and the UCL. This allegation targets a practice commonly referred to as a "mark-up." The Martinezes do not pursue the RESPA "mark-up" claim on appeal.

[3]No class was certified before the appeal.

RESPA Section 8(b) in doing so because Wells Fargo provided a service in exchange for the fee. It also held that the Martinezes' claims of "unfair" and "fraudulent" conduct under the UCL were preempted by the National Bank Act and related federal regulations, and dismissed the third UCL claim of "unlawful" conduct because the Martinezes failed to identify an underlying illegal predicate act.

The Martinezes appeal the district court's dismissal of the RESPA "overcharge" claim and the three UCL-related claims.

## III.  Analysis

This Court reviews issues of statutory interpretation and preemption *de novo*. *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008). A district court's decision to grant a motion to dismiss for failure to state a claim is also reviewed *de novo*. *Decker v. Advantage Fund Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004) (citation omitted).

### A.   *"The "Overcharge" Claim under RESPA*

The Martinezes allege that the $800 underwriting fee charged by Wells Fargo violates Section 8(b) of RESPA, which provides:

> (b) Splitting charges. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

[1] The Department of Housing and Urban Development ("HUD"), which Congress authorized to administer RESPA,[4]

---

[4]*See* 12 U.S.C. § 2617(a); *Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1009 (9th Cir. 2002).

interprets this section as prohibiting overcharges. *See* RESPA Statement of Policy 2001-1, 66 Fed. Reg. 53,052, 53,057-58 (Oct. 18, 2001) (citing 24 C.F.R. § 3500.14(g)(2) ("If the payment of a thing of value bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for services or goods actually performed or provided.")).

**[2]** *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), established a two-step test for judicial review of an agency's construction of a statute it administers. First, the court must consider "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If the intent of Congress is clear, the inquiry ends, because the court "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. But if a court concludes that the statute is "silent or ambiguous with respect to the specific issue," the court must consider whether the agency's interpretation of the ambiguous provision is "based on a permissible construction of the statute." *Id.* at 843. At the second step, the court must accord "considerable weight" to the agency's interpretation of a statutory scheme it is entrusted to administer. *Id.* at 844.

**[3]** The language of Section 8(b) prohibits only the practice of giving or accepting money where no service whatsoever is performed in exchange for that money: "No person shall give and no person shall accept . . . any charge made or received . . . other than for services *actually performed*." 12 U.S.C. § 2607(b) (emphasis added). By negative implication, Section 8(b) cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed.[5]

---

[5]The Martinezes assert that Section 8(b) prohibits overcharges, arguing that "RESPA § 8(b) does not specifically address the situation at bar" and thus "is sufficiently silent on the precise matter as to be ambiguous." However, Section 8(b)'s "silence" on the subject of overcharges does not

**[4]** Although this is an issue of first impression in this circuit,[6] three other circuits have considered whether a mortgage lender or other settlement service provider violates RESPA Section 8(b) by charging "excessive" fees for a settlement service it provided, and all have held that it does not. *See Friedman v. Mkt. St. Mortgage,* 520 F.3d 1289, 1291 (11th Cir. 2008) (holding that "subsection 8(b) does not apply to settlement fees that are alleged to be excessive"); *Santiago v. GMAC Mortgage Group, Inc.,* 417 F.3d 384, 385 (3d Cir. 2005) (finding that "RESPA does not provide a cause of action for overcharges"); *Kruse,* 383 F.3d at 56 ("We conclude that section 8(b) clearly and unambiguously does not extend to overcharges.").

**[5]** The reasoning of the *Kruse* court is particularly instructive here because it involved claims against Wells Fargo that are identical to those alleged by the Martinezes.[7] The Second Circuit ruled in *Kruse* that, whatever its size, the alleged overcharge by Wells Fargo was "for" the services actually rendered by Wells Fargo and received by the borrowers, and therefore was not prohibited by Section 8(b). 383 F.3d at 56.

**[6]** We join our sister circuits in holding that the text of

---

mean that Congress's actions were ambiguous on that subject. Congress simply did not legislate at all on overcharges. *Cf. Krzalic v. Republic Title Co.,* 314 F.3d 875, 881 (7th Cir. 2002) (holding, in the context of mark-up charges, that "if the practice of repricing incidental charges is a fraud or market failure or abuse of some sort, still it is not a market failure that section 8(b) can reasonably be thought to address, and so a reading of the section that leaves the failure uncured is not a reading that creates a loophole").

[6]In dicta, we have previously described Section 8(b) as a law that "prohibits the payment of any percentage or division of a charge except for services actually rendered." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003).

[7]This is the case in which the Martinezes sought, unsuccessfully, to intervene.

Section 8(b) is unambiguous and does not extend to overcharges, and therefore we do not reach the second step of a *Chevron* analysis by determining if HUD's interpretation warrants deference.

### B.   *The Unfair Competition Law Claims*

**[7]** California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*., prohibits business acts or practices that are "unlawful," "unfair," or "fraudulent." *Id*. § 17200. Each of these three prongs constitutes a separate and independent cause of action. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999) (citations omitted).

The Martinezes allege that Wells Fargo: (1) committed "unfair" competition by overcharging underwriting fees and marking up tax service fees; (2) engaged in "fraudulent" practices by failing to disclose actual costs of its underwriting and tax services; and (3) that these actions violated multiple state and federal laws, which predicate violations are independently actionable under the UCL as "unlawful" conduct.

### 1.   *Preemption by the National Bank Act*

**[8]**  The National Bank Act (the "Act") vests national banks such as Wells Fargo with authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). Real estate lending is expressly designated as part of the business of banking. 12 U.S.C. § 371(a).

**[9]**  As the agency charged with administering the Act, the Office of the Comptroller of the Currency ("OCC") has the primary responsibility for the surveillance of the "business of banking" authorized by the Act. *Nationsbank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995). To carry out this responsibility, the OCC has the power to pro-

mulgate regulations and to use its rulemaking authority to define the "incidental powers" of national banks beyond those specifically enumerated in the statute. *See* 12 U.S.C. § 93a (authorizing the OCC "to prescribe rules and regulations to carry out the responsibilities of the office"); *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 312 (2d Cir. 2005). OCC regulations possess the same preemptive effect as the Act itself. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

**[10]** The Act (and OCC regulations thereunder) does not "preempt the field" of banking. "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the [Act]." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) (citations omitted). However, state laws that "obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers" are preempted. 12 C.F.R. § 34.4(a); *see Watters*, 550 U.S. at 13 ("Beyond genuine dispute, state law may not significantly burden a national bank's own exercise of its real estate lending power . . . ." ); *Bank of Am. v. City and County of S.F.*, 309 F.3d 551, 561 (9th Cir. 2002) ("State attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the National Bank Act, or impair the efficiency of national banks to discharge their duties." (citation omitted)).

State laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its real estate lending powers. Such laws are not designed to regulate real estate lending, nor do they have a disproportionate or other substantial effect on lending. In fact, the OCC has specifically cited the UCL in an advisory letter cautioning banks that they may be subject to such laws that prohibit unfair or deceptive acts or practices. *See* OCC Advisory Letter, Guidance on Unfair or Deceptive

Acts or Practices, 2002 WL 521380, at *2, *7 n.2 (Mar. 22, 2002).

Thus, for example, various district courts have held that the Act does *not* preempt a claim of express deception asserted under state law. *See, e.g., Mann v. TD Bank, N.A.*, No. 09-1062, 2009 U.S. Dist. LEXIS 106015 (D.N.J. Nov. 12, 2009) (holding that claims brought under the New Jersey Consumer Fraud Act regarding a bank's advertising of "free" and "no fee" gift cards was deceptive, misleading, and unlawful because it failed to disclose the existence of dormancy and replacement fees was not preempted); *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008) (holding that a claim under the Georgia Fair Business Practices Act that a bank engaged in unfair or deceptive business practices by manipulating the posting of transactions to an account in order to impose overdraft fees was not preempted); *Jefferson v. Chase Home Finance*, No. 06-6510, 2007 U.S. Dist. LEXIS 94652 (N.D. Cal. Dec. 14, 2007) (holding that a UCL claim regarding a bank's alleged misrepresentations in crediting prepayments to customers' accounts was not preempted).

**[11]** These cases notwithstanding, we conclude that two different OCC regulations preempt the Martinezes' claims. The first is 12 C.F.R. § 7.4002(b)(2), which relates to setting fees and which states, in part:

> The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles.

**[12]** We hold that the Martinezes' claim of unfair conduct is preempted under this regulation. The underlying conduct the Martinezes allege is "unfair" is the overcharging of underwriting fees and the marking up of tax service fees. In essence, the Martinezes argue that these fees are too high, and

ask the court to decide how much an appropriate fee would be. However, the OCC has clearly provided how the fees are to be determined. Under 12 C.F.R. § 7.4002(b)(2), these are business decisions to be made by each bank. The Martinezes' "unfair" claim under the UCL is therefore preempted by the Act. *Cf. Monroe Retail, Inc. v. RBS Citizens, N.A.,* 589 F.3d 274, 283-84 (6th Cir. 2009) (holding that interpreting an Ohio statute to prohibit banks from deducting service fees after receiving a garnishment order on an account held at the bank would allow state law to "significantly interfere" with the national bank's ability to collect and set service fees as provided for in 12 C.F.R. §§ 7.4002(a) and (b)(2)).[8]

   **[13]** The "unfair" claim is also preempted under subsection 10 of the second OCC regulation, 12 C.F.R. § 34.4(a), which addresses "Real Estate Lending and Appraisals" and provides, under the heading "Applicability of state law":

> Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans under 12 U.S.C. 371 and

---

[8]The Martinezes urge reversal because Wells Fargo allegedly failed to pursue "safe and sound banking principles" when charging the fees in dispute. They discuss four factors listed in § 7.4002(b)(2) that the OCC considers in determining whether a bank has engaged in "safe and sound banking."

The Martinezes' argument does not support their position that their UCL claims are not preempted by the Act; rather, it goes to whether Wells Fargo has abided by the OCC regulation. Such an inquiry, besides being inapposite to the issue of preemption, is fruitless because the regulation of a national bank's adherence to OCC regulations is within the exclusive purview of the OCC. *See, e.g.*, *Watters*, 550 U.S. at 13 ("In particular, real estate lending, when conducted by a national bank, is immune from state visitorial control: The [Act] specifically vests exclusive authority to examine and inspect in OCC." (citing 12 U.S.C. § 484(A)).

§ 34.3, without regard to state law limitations concerning . . . (9) [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in [credit-related documents] . . . [and] (10) [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages . . . ."

*Id.* §§ 34.4(a)(9), (10).

**[14]** The Martinezes further allege "fraudulent" conduct with respect to Wells Fargo's failure to disclose the costs it incurs for services, instead of just its charges for rendering those services to borrowers. But subsection (9) of this same regulation expressly authorizes banks to "make real estate loans . . . without regard to state law limitations concerning . . . [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in [credit-related documents]."

**[15]** The Martinezes' "fraudulent" claim under the UCL therefore is also preempted by the Act. *See* OCC Interpretive Letter No. 1005, 2004 WL 3465750 (June 10, 2004) (stating that the types and features of state laws specifically enumerated in 12 C.F.R. § 34.4 interfere with the ability of national banks to operate under uniform federal standards, and are thus preempted).

### 2. *Failure to State a Claim for Unlawful Practices*

**[16]** The UCL's "unlawful" prong is essentially an incorporate-by-reference provision. *See Cel-Tech*, 973 P.2d at 539-40 ("By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." (citations and some internal quotation marks omitted)).

**[17]** The Martinezes allege that Wells Fargo's alleged overcharges and mark-ups, together with the failure to disclose their costs, violated various state and federal laws and thereby constitute "unlawful" business practices, in violation of the UCL. To the extent that any of these state laws address overcharges, mark-ups, and disclosure duties, by or of a national bank, they are preempted and cannot serve as predicate violations for the claim of "unlawful" conduct.

The Martinezes also allege, as a predicate violation, that Wells Fargo knowingly made a false statement on the HUD-1 Settlement Statement by listing the amounts charged to the Martinezes for underwriting and tax services, rather than what it cost Wells Fargo to perform or to subcontract those services. The Martinezes argue that this conduct violates 18 U.S.C. §§ 1001 and 1010, which generally proscribe false statements in matters involving the federal government and HUD, respectively.

The HUD-1 Settlement Statement is a standard form that must be used for the statement of settlement costs in every federally related mortgage loan. RESPA Section 4, 12 U.S.C. § 2603(a); 24 C.F.R. § 3500.8(a). On this form, the settlement service provider must "conspicuously and clearly itemize all charges imposed upon the borrower . . . in connection with the settlement . . . ." 12 U.S.C. § 2603(a).[9]

**[18]** No express cause of action was created by Congress under RESPA Section 4. Even if we were to conclude that there is a private cause of action for alleged violations of § 2603, the language of the statute is clear that the HUD-1 Settlement Statement requires only a list of "*charges imposed upon the borrower*." 12 U.S.C. § 2603(a). This clearly means that Wells Fargo must list the amounts it is charging the Mar-

---

[9]Appendix A to 24 C.F.R. § 3500.8 (the instructions for the HUD-1 form) does refer to "settlement *costs*," but the plain language of the statute and regulation refers to "charges." *See* 24 C.F.R. § 3500.8(b).

tinezes for its settlement services, not that it must list the costs it incurred in providing those services. In support of their position, the Martinezes contend that the distinction between a "charge" and a "cost" is a hypertechnical one that cannot be squared with common usage, as well as with the purpose of the HUD-1 statement. This argument cannot stand. It is beyond dispute that there is a difference between what a business "charges" its customers for a service or product, and what that service or product "costs" the business. That difference is called "profit," and it is the motive for businesses to sell services or products. The Martinezes' recourse to general congressional intent—here, that Congress intended, in enacting RESPA, for home loan consumers to receive more disclosure, not less—cannot support their position in light of the plain language of the statute. Because there is no requirement for it to disclose actual costs on the HUD-1 Settlement Statement, Wells Fargo's conduct in not doing so cannot be "fraudulent" in violation of 18 U.S.C. §§ 1001 and 1010.

The predicate violations alleged by the Martinezes are either preempted by the National Bank Act, or do not violate any law. Therefore, the district court properly held that the Martinezes failed to state a claim that Wells Fargo engaged in "unlawful" conduct in violation of the UCL.

## CONCLUSION

The clear and unambiguous language of RESPA Section 8(b) does not reach the practice of "overcharging." The National Bank Act preempts the Martinezes' UCL state law claims alleging "unfair" and "fraudulent" conduct, and the allegations of "illegal" conduct fail to state a claim. The judgment of the district court is therefore **AFFIRMED.**