CALLAHAN, Circuit Judge,
dissenting:
I respectfully dissent. I disagree with the majority’s characterization of Larin’s claims and would affirm the district court. In my view, the underlying conduct Larin alleges to support his state law claims is that the Bank’s practice of making deposited funds immediately available to ODP customers, without placing a hold on a larger or suspicious deposit, increases the ODP customers’ risk of fees.
National banks may exercise their “deposit-taking powers without regard to state law limitations concerning: ... (ii) Checking accounts; (iii) Disclosure requirements; [and] (iv) Funds availability[.]” 12 C.F.R. § 7.4007(b)(2)(ii)-(iv). Larin contends that the state laws at issue in this case are laws of “general applicability” regulating deceptive and unfair business practices, and are therefore outside the ambit of preemption under Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 555 (9th Cir.2010). However, in Martinez, this Court held that claims under California’s Unfair Competition Law were preempted even though the plaintiffs claims alleged deception because the bank’s “underlying conduct” fell within the categorical preemption subsection of the NBA. Id. at 555-57. Similarly, the “underlying conduct” Larin alleges has to do with the Bank’s policies and practices involving “checking accounts” and “funds availability,” and his claims based on this “underlying conduct” are preempted. Cf. 12 C.F.R. § 7.4007(b)(2).
The majority takes a different view of the gravamen of Larin’s claims, concluding that “what Larin alleges is that the Bank affirmatively deceived him as to the risks and benefits of the ODP program, not that the Bank operated the program in an unlawful manner or that it failed to provide any requisite disclosure as to the program’s operation.” Mem. Dispo. at 122. Even though Larin alleges in his complaint that the Bank deceptively marketed its ODP program by promising that enrollment in the program will protect customers from fees,[1] he does not allege that his decision to enroll in the ODP program caused his injury. Rather, he alleges that the fact that the Bank made the funds from a deposited check available to him for immediate withdrawal caused his injury. See Complaint ¶¶ 18-25, 45-51. Ultimately, the remedies available to Larin for this injury under the applicable state laws would directly interfere with the Bank’s deposit-taking powers.
Larin specifically alleges in his Complaint that it was because the Bank made the deposit available to him the next day that he was able to withdraw $6,420 from his account. See Complaint ¶49. The availability of these funds to Larin the next day has nothing to do with his enrollment in the ODP program because, pursuant to the deposit agreement, the Bank has a general policy of making deposited funds available the next day to all customers. See Complaint ¶ 18. Larin admitted that this is the Bank’s general policy, that he was aware of it, and that he knew that deposited funds’ availability did not mean that the deposit had cleared. See Complaint ¶¶ 18-20, 45-51. If any of the Bank’s customers withdraw against a deposited check that later bounces, they will *124 incur fees in accordance with the Deposit Agreement. The only difference for ODP customers is where the fees are assessed. Non-ODP customers will incur various fees on their checking accounts, whereas ODP customers like Larin will incur fees on their linked credit card accounts. Thus, like the facts in Martinez, the Bank’s alleged deceit in advertising the ODP program is not the causal basis for Larin’s claims. Accordingly, I would affirm the district court’s judgment dismissing Larin’s claims as preempted.

. As a factual matter, the Bank’s statements regarding the ODP that the Complaint identifies as deceptive only purport to usually help customers avoid some fees. See Complaint ¶¶ 73-76.